**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

UNITED STATES OF AMERICA,

v.

CHARLES HYDE,

CASE NO.: 2:19-cr-5

FILED
Scott L. Poff, Clerk
United States District Court

By MGarcia at 11:53 am, Apr 14, 2020

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Suppress. Doc. 252. The Government filed a Response. Doc. 254. I conducted a hearing on this Motion on February 10, 2020, at which Defendant, Defendant's counsel, Assistant United States Attorney Jenna Solari ("AUSA Solari"), and Task Force Agent Shawn Fields appeared. After review of the parties' written and oral arguments and based on the relevant case law, I **RECOMMEND** the Court **DENY** Defendant's Motion.

## BACKGROUND

Defendant has been indicted for: conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846; possession with intent to distribute methamphetamine and marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k); and possession of a firearm in furtherance of drug trafficking offenses, in violation of 18 U.S.C. § 924(c). Doc. 257. These charges stem from allegations that Defendant and others, from at least July 2016 until December 9, 2018, knowingly conspired to possess with intent to distribute methamphetamine

and that, on May 3, 2018, Defendant also possessed with intent to distribute methamphetamine and marijuana and possessed prohibited firearms and ammunition. Id.

Defendant moves to suppress evidence obtained during the execution of a search warrant of his residence and person on May 3, 2018. Docs. 252, 281. Defendant raises various challenges to the sufficiency of the warrant application and the execution of the search. Specifically, Defendant contends the application for the search warrant lacked probable cause under the totality of the circumstances. According to Defendant, there is a discrepancy between the date in the search warrant application and the authorized search, the description of the items to be seized is antiquated and does not contain all items seized, and the confidential informant's reliability was not set forth in the affidavit. Defendant also objects to the "no knock" provision contained in the search warrant.

## DISCUSSION

### I.      Testimony and Argument Presented at the Hearing

At the February 10, 2020 hearing, the Government called Liberty County Sheriff's Officer Shawn Fields ("TFA Fields") to testify. Doc. 264. TFA Fields was a task force agent with the Georgia Bureau of Investigation at the time the search warrant was executed on May 3, 2018. TFA Fields is now a task force officer with the Drug Enforcement Agency and has over 20 years' law enforcement experience.

TFA Fields testified about the investigation of Defendant and the search of Defendant's residence. TFA Fields described a traffic stop of confidential informant ("CI") that occurred a "couple weeks" before May 3, 2018. The CI was questioned during the stop and informed law enforcement that Defendant was involved in drug trafficking. TFA Fields stated that Liberty County law enforcement officers conducted surveillance on Defendant's residence between the

traffic stop and May 3, 2018, and during that surveillance observed movements consistent with drug trafficking. On May 3, 2018, TFA Fields met with the CI and arranged for the CI to make a controlled buy of methamphetamine from Defendant that same day.

During the May 3, 2018 controlled buy, TFA Fields used audio and video recording equipment to monitor the transaction in real time and to create a recording of the transaction. Ultimately, the CI successfully purchased a quantity of methamphetamine from Defendant, which TFA Fields verified by reviewing the recordings and interviewing and searching the CI after the transaction. TFA Fields testified Defendant could be heard on the audio portion of the recordings discussing having six kilograms of methamphetamine and possessing weapons for safety. Based on the recordings and the controlled buy, TFA Fields wanted to secure a search warrant for Defendant's residence, person, and vehicle, because, in part, he felt it was important to stop such a large amount of methamphetamine from making it into the community.

Liberty County Magistrate Judge Bomar came to the task force's office on May 3, 2018, the date the warrant was issued. Judge Bomar was present while Detective Gallob, who was present during the controlled-buy surveillance, typed the search warrant application. At the same time, TFA Fields typed the operation plan. TFA Fields personally described the controlled buy that occurred earlier that day to Judge Bomar, described other information officers obtained from their investigation, and explained why officers wanted to obtain a search warrant the same day. TFA Fields testified that Judge Bomar was sitting in the captain's office down the hall from where he and Detective Gallob were and had come to the office specifically to sign the search warrant. Judge Bomar signed the warrant at 9:24 p.m. on May 3, 2018, doc. 254-1 at 3, 4–7, and officers executed the warrant right after Judge Bomar signed it.

Upon the officers' arrival at Defendant's residence at 207 Ed Powers Boulevard in Hinesville, Georgia, Defendant was holding a firearm. Ultimately, an officer shot Defendant in the hand, knocking the gun out of Defendant's hand. Defendant was given medical attention at the scene and then taken to a local hospital. Because of the shooting, the Georgia Bureau of Investigation took over the scene to investigate. The scene was secured and monitored by GBI officers for the remainder of the evening and part of the next day. No items were taken from Defendant's residence by Liberty County officers on the night of May 3, 2018. Liberty County law enforcement personnel came back to Defendant's house the next day, May 4, 2018, and searched the residence. Thus, Liberty County officers initially sought to execute the search warrant on May 3, 2018, but because the officers discharged a firearm during that incident and Defendant was injured, the operation was curtailed, and the Liberty County officers did not complete the search until May 4, 2018. During the search on May 4, officers seized the following items: body armor; one ski mask; United States currency; one cellular phone; ammunition; firearm parts; two firearms; several bags containing suspected marijuana; several bags containing suspected methamphetamine; and one digital scale.[1] Doc. 254-2. Defendant seeks to suppress these items.

TFA Fields stated he discovered on May 29, 2018—approximately three weeks after execution of the warrant—that the search warrant affidavit incorrectly stated the controlled buy at Defendant's residence occurred on April 3, 2017, as opposed to May 3, 2018. Upon realizing

---

[1] The property reports submitted to the Court by the Government identify only one cellular phone and do not identify the two firearms. Doc. 254-2. The property reports are captioned as "Georgia Bureau of Investigation Property Reports," but TFA Fields explained at the hearing that the reports document items seized by Liberty County task force officers. TFA Fields also explained that the GBI, rather than Liberty County officers, seized and took possession of the firearms, which likely explains why the firearms are not listed in the Liberty County reports. It is unclear why only one cellular phone is identified in these records. The absence of property records identifying the two firearms and one of the cellular phones is, ultimately, immaterial to the Court's resolution of Defendant's Motion to Suppress.

the error, TFA Fields created an addendum to the search warrant in which he corrected the date that should have been included in the affidavit and addressed a few other discrepancies, including errors regarding the time due to the drafting officer's mistakes regarding the use of military time. Doc. 254-1. TFA Fields took the addendum to Judge Bomar on May 29, 2018, and Judge Bomar executed the addendum on the same date. Id. at 8. TFA Fields testified during the hearing that he provided Agent Gallob with the information contained in the original affidavit, and they were "kind of" "tag teaming" to write the application. TFA Fields also stated it was possible Agent Gallob utilized another, older search warrant application to prepare the affidavit for the search warrant for Defendant's residence, automobile, and person.

## II.    Defendant's Motion to Suppress

In his initial Motion to Suppress (as argued at the February 10, 2020 hearing), Defendant raises essentially four grounds for the suppression of evidence seized during the search. Doc. 252. First, Defendant points out that Agent Fields' original affidavit presented in support of the warrant stated the controlled by the CI occurred on April 3, 2017, but the affidavit and warrant were signed on May 3, 2018. Id. at 1. Second, Defendant contends the affidavit submitted in support of the search warrant "is unconstitutionally vague[,]" as it contains no probable cause to support a search for many of the items listed in the warrant, such as phone records and computer hardware and software. Id. at 1–2. Defendant further contends the affidavit and warrant did not list firearms or specify the type of narcotics to be searched for but included floppy disks and other antiquated technology. Id. at 2. Third, Defendant alleges the veracity of the confidential informant was not corroborated sufficiently. Id. Fourth, Defendant alleges the no-knock provision is a one-sentence justification lacking sufficient evidence to establish "reasonable

grounds to believe that the giving of verbal notice would greatly increase the officers' peril and/or lead to the immediate destruction of evidence." Id.

In response, the Government states the language in the affidavit and warrant to which Defendant objects (i.e., language concerning floppy disks, telephone answering machines, etc.), even if antiquated, "is tantamount to a request for 'records, in any form,' relating to the commission of a specified offense." Doc. 254 at 5. Even if the language were found to be overbroad, the Government submits the items that were actually seized—controlled substances, packaging materials, a digital scale, money, body armor, firearms and ammunition, and cellular telephones—were not improperly seized under the warrant. Id. at 6. The Government additionally argues that, even if the warrant is not supported by probable cause in the affidavit based on the inadvertently erroneous date, the good-faith exception supports the officers' reliance upon the warrant. Id. at 6–7. Finally, the Government contends the "no knock" provision in the warrant was adequately supported by the factual allegations in the affidavit, and, even if it were not, the exclusionary rule should not be applied to the evidence seized. Id. at 8.[2]

### III.     Faretta Hearing and Supplemental Briefing

Following the February 10, 2020 hearing, Defendant filed two motions asking to proceed pro se. Docs. 270, 271. On March 18, 2020, the Court conducted a hearing on the motions in accordance with Faretta v. California, 422 U.S. 608 (1975), and its progeny. The Court concluded Defendant voluntarily, knowingly, and intelligently exercised his constitutional right to self-representation and allowed Defendant to proceed pro se. Doc. 279. The Court also appointed standby counsel. Id. During the March 18, 2020 hearing, Defendant made it clear that he desired to supplement his Motion to Suppress. Therefore, the Court provided Defendant time

---

[2]     The Government also asserts in its Response that Defendant's Motion to Suppress was untimely. Doc. 254 at 9. At the hearing, the undersigned rejected that argument and deemed the Motion timely.

to file supplemental briefing, or any other materials he wished to file, and directed Defendant to state in his supplemental briefing whether he requested an additional hearing on the Motion to Suppress. Id. at 5. The Court permitted the Government time to respond to any supplemental briefing filed by Defendant. Id. Defendant filed his supplemental brief and did not request an additional hearing. Doc. 281. The Government responded. Doc 283.

In his supplemental brief, Defendant generally raises the same arguments his prior counsel raised in the initial Motion to Suppress and at the February 10, 2020 hearing. Specifically, Defendant argues: (1) the affidavit was "improperly and illegally executed, the information in affidavit was never initialed by magistrate, and information was stale, which constitutes false swearing" (presumably, attacking the April 3, 2017 date for the CI controlled buy); (2) the affidavit and warrant were unconstitutionally vague regarding the items sought to be seized; (3) the confidential informant identified in the affidavit was not reliable and his statements were not corroborated; and (4) the no-knock request was not supported by probable cause. Doc. 281. Defendant also suggests that the search warrant was not left at his residence after the warrant was executed. Defendant states he asked his "boss to send [him] copies of the warrants reportedly left in a conspicuous place," but "she informed [Defendant] nothing was left behind." Id. at 2. Defendant does not provide the name of his boss or describe the circumstances of her efforts to locate the receipt. Regarding the execution of the warrant, Defendant describes the event as an "excessive force violent invasion of privacy" and "a military type invasion, destroying property (unnecessary) and assaulting homeowner with deadly weapon." Id. at 4. Defendant offers these characterizations in support of his challenge to the no-knock execution of the warrant.

The Government filed a response to Defendant's supplement, arguing that Defendant's arguments were all raised and addressed during the February 10, 2020 hearing and stating that the Government relied on its previous arguments in opposition to the Motion. Doc. 283. Regarding execution of the warrant, the Government points to portions of Defendant's interview conducted on May 3, 2018, where Defendant stated he "poked a gun out the door" (which he clarified was "a pistol") because he wanted law enforcement to kill him. Id. at 2–3 (The Government has since provided the Court with an audio recording of the interview, which the Court has considered.). The Government argues Defendant's own actions are what caused the violent interchange during the execution of the search warrant, not any misconduct by law enforcement. Additionally, the Government argues that, even if a no-knock warrant was not permitted, and even if the officers executing the warrant failed to adequately announce their presence,[3] no evidence should be suppressed on those grounds, as Defendant's sole remedy would be a civil suit. Id. at 3.

Defendant's Motion to Suppress is now ripe for resolution. In reaching the conclusions below, the undersigned has considered Defendant's original Motion, the Government's Response, all argument and evidence presented at the March 18, 2020 hearing, Defendant's supplemental brief, the Government's response to Defendant's supplemental brief, and the audio recording of Defendant's May 3, 2018 interview.

## IV. Analysis

Defendant contends the warrant and subsequent search in this case were not supported by probable cause because the warrant contained an error about the date of the controlled buy, the warrant was not sufficiently specific, and the CI who provided information to law enforcement

---

[3] During the February 10, 2020 hearing, TFA Fields testified the officers announced their presence contemporaneous with entering Defendant's residence.

was not sufficiently reliable. Defendant also contends the search was executed in an unconstitutional manner and the officers executing the search failed to leave a copy of the warrant at Defendant's residence. Defendant argues that, as a result, all evidence seized during the search should be suppressed.

Before addressing each of Defendant's arguments, it is important to note that "[s]earch warrants are presumed to be validly issued." See United States v. Bushay, 859 F. Supp. 2d 1335, 1377 (N.D. Ga. 2012) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). Where a defendant seeks suppression of evidence seized during a search conducted pursuant to a warrant, the defendant has the burden of establishing that the warrant was defective or executed improperly. Id. (citing United States v. Van Horn, 789 F.2d 1492, 1500 (11th Cir. 1986); and then citing United States v. Marx, 635 F.2d 436, 441 (5th Cir. 1981); and then citing United States v. Osborne, 630 F.2d 374, 377 (5th Cir. 1980)); United States v. Vigo, 413 F.2d 691, 693 (5th Cir. 1969) (Defendants have the burden of proof in challenging the validity of the execution or service of the search warrant.); United States v. Norris, No. 1:05-CR-479, 2006 WL 8425336, at *7 (N.D. Ga. May 18, 2006), *report and recommendation adopted*, 2007 WL 9657874 (N.D. Ga. Sept. 18, 2007) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978); and then citing United States v. Van Horn, 789 F.2d 1492, 1500 (11th Cir. 1986); and then United States v. Marx, 635 F.2d 436, 441 (5th Cir. 1981)). With these principles in mind, I address each of Defendant's challenges.

### A. Date Listed on Warrant

Defendant's first challenge concerns the date of the controlled buy in the warrant. As noted, the warrant states law enforcement officers conducted the controlled buy using the CI on April 3, 2017. Doc. 254-1. However, TFA Fields testified that the April 3, 2017 date was a

typographical error, and that the controlled buy actually occurred on May 3, 2018—the same day the warrant was applied for and issued and the same day officers attempted to execute the warrant. TFA Fields further testified he personally communicated with Judge Bomar, the magistrate judge who signed the warrant, on May 3, 2018 and explained that the controlled buy had occurred earlier that day. Based on these facts, the Government argues: (1) the April 3, 2017 date was merely a harmless, typographical error; and (2) evidence seized during the search should not be suppressed because the officers executing the search had a reasonable, good-faith belief that they were acting according to legal authority.[4] Doc. 254.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (internal citation omitted). "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts" and is based on the "totality of the circumstances test." Id. (internal citations and punctuation omitted).

---

[4]     At the February 10, 2020 hearing, the Government made the additional argument that the warrant would have been supported by probable cause even if the controlled buy had occurred on April 3, 2017, as stated in the affidavit. In other words, the Government contends that, even if the controlled buy had occurred thirteen months before TFA Fields submitted the warrant application to Judge Bomar, the warrant would still have been supported by probable cause. Because I recommend the Court deny Defendant's Motion to Suppress on other grounds, I do not address this argument.

Under the standard established in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), "the task of a judge issuing a search warrant is to determine if a warrant sufficiently describes the place to be searched, enabling the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that other premises might be mistakenly searched." <u>United States v. White</u>, 356 F.3d 865, 868–69 (8th Cir. 2004) (citing <u>United States v. Nichols</u>, 344 F.3d 793, 797 (8th Cir. 2003)). "The duty of a reviewing court is simply to ensure that the judge had a substantial basis for concluding that probable cause existed." <u>Id.</u> at 869 (citing <u>Gates</u>, 462 U.S. at 238–39). "Courts are to interpret affidavits in a nontechnical, common-sense fashion, and the [judge's] determination of probable cause is entitled to great deference." <u>Id.</u> (alteration in original) (citing <u>United States v. Arenal</u>, 768 F.2d 263, 266 (8th Cir. 1985)).

In this case, the date of the controlled buy involving the CI is highly relevant to the probable cause determination. Indeed, TFA Fields' affidavit makes it clear the controlled buy was the primary factual basis for the request for the warrant. Doc. 254-1 at 1. It was during the controlled buy that law enforcement officers learned Defendant was likely trafficking in large quantities of narcotics, including methamphetamine and marijuana, from his residence and that Defendant possessed firearms at his residence during drug sales. If that controlled buy occurred on May 3, 2018—the same day officers applied for the warrant—there is a high probability that contraband or evidence of a crime would be found in Defendant's residence. However, if the controlled buy occurred thirteen months earlier, on April 3, 2017—as reflected in the warrant— the probability would be much lower.

TFA Fields testified under oath that this date in his affidavit was a typographical error, and that the controlled buy actually occurred on May 3, 2018, the same day the warrant was

prepared and presented to Judge Bomar issued and the same day the officers initially attempted to execute the warrant. TFA Fields explained the error likely occurred when Agent Gallob utilized another, older search warrant application to prepare the affidavit for the search warrant for Defendant's residence. TFA Fields testified he discovered the date error later in May 2018 and, on May 29, 2018, presented Judge Bomar with an addendum to the search warrant application to correct the date (as well a few time discrepancies, none of which are challenged by Defendant). Id. at 8. Judge Bomar signed off on this addendum the same day. Id. Moreover, TFA Fields testified he personally described the events of the day, including the controlled buy, to Judge Bomar at the task force office on the afternoon of May 3, 2018, and, in fact, Judge Bomar had come to the office specifically to consider the warrant application based on those events. I find TFA Fields' testimony on these points to be credible.

Defendant has not offered any evidence to suggest that Judge Bomar relied on the April 3, 2017 date in the affidavit. Moreover, there is no indication that any event related to Defendant occurred on April 3, 2017, about which law enforcement officers or Judge Bomar may have been confused. The affidavit taken as a whole plainly details the events of a single day, leading up to the evening hours, when the affidavit was submitted to Judge Bomar for consideration, supporting the view that the affidavit detailed events of May 3, 2018, not events from thirteen months earlier. Finally, it is implausible that Judge Bomar relied on the April 3, 2017 date to issue the warrant, given that he travelled to the task force office on May 3, 2018 for the purpose of considering the task force's warrant application based on events that were unfolding in a rapid, real-time manner. Based on these facts, I find the April 3, 2017 in the search warrant application is plainly a scrivener's error, and neither the affiant nor Judge Bomar could have plausibly relied on the April 3, 2017 date; therefore, the date error in the affidavit does not

disturb or undermine Judge Bomar's probable cause finding.  United States v. Woods, 506 F. App'x 979, 981 (11th Cir. 2013) (affirming district court's denial of motion to suppress based on typographical error in affidavit related to controlled buy); United States v. Snyder, 471 F. App'x 884, 886 (11th Cir. 2012) (affirming district court's denial of motion to suppress based on conclusion that affidavit in support of warrant contained typographical error); United States v. Leflore, No. 2:13cr287, 2014 WL 12639856, at *4 (M.D. Ala. Apr. 21, 2014) (citing White, 356 F.3d at 868, in support of conclusion that a scrivener's error in the time on the search warrant does not render the warrant invalid).

Even if the controlled-buy date could not be disregarded as a harmless scrivener's error and probable cause was lacking due the error, the officers who executed the search were still entitled to rely on the signed warrant in conducting the searches of Defendant's residence.  As a result, the evidence seized during the search should not be suppressed.  Courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.  United States v. Leon, 468 U.S. 897, 922 (1984).  Indeed, under Leon, evidence seized in an illegal search is still admissible if the evidence was "seized by officers relying on a warrant issued by a detached and neutral magistrate."  Id. at 913.

The Leon good-faith exception to the exclusionary rule applies in all but four limited sets of circumstances.  Id. at 923.  "The four sets of circumstances are . . . : (1) where 'the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) 'where the issuing magistrate wholly abandoned his judicial role . . .'; (3) where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable'; and (4) where, depending upon the circumstances of the particular case, a warrant is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal citations omitted).

The Government contends that, even if the warrant and search were not supported by probable case, the evidence seized during the search should not be excluded due to the Leon good-faith exception, and none of the circumstances that would prevent application of the Leon good-faith exception are present here. Defendant does not present any significant opposition to the Government's Leon good-faith exception argument. Moreover, based on the Court's review of the entire record, the good-faith exception plainly applies here, and none of the four circumstances that would justify not applying the exception are present. Thus, even if probable cause were not established within the four corners, the officers conducting the search in this case reasonably relied on the warrant under the Leon good-faith exception, and the evidence should not be excluded.

## B. Description of Items in Search Warrant Affidavit

Defendant argues the description of the items listed in the search warrant application were not specific enough to support a finding of probable cause. General warrants do not satisfy the Fourth Amendment requirement that the warrant contain a description of the place to be searched and the persons or things to be seized. Dalia v. United States, 441 U.S. 238, 255 (1979). The particularity requirement protects persons against indiscriminate rummaging through their property by government agents. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). "A description in a warrant is sufficiently particular 'when it enables the searcher reasonably to ascertain and identify the things to be seized.'" United States v. Zhu, 555 F. Supp.

2d 1375, 1381 (S.D. Ga. 2008) (quoting United States v. Santarelli, 778 F.2d 609, 614 (11th Cir.

1985); and then United States v. Betancourt, 734 F.2d 750, 754–55 (11th Cir. 1984)).  When

warrants specifically connect the items to be searched for and seized to the specific criminal

conduct suspected, it weighs in favor of finding that the warrants are adequately particularized.

Id. (citing United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995) (finding that overly broad

warrant which authorized seizure of virtually every document and computer file could have been

made more particular by specifying suspected criminal conduct); United States v. Bianco, 998

F.2d 1112, 1116 (2d Cir. 1993) (finding warrant overly broad in part because it did not make

reference to any type of criminal activity)).  "The Eleventh Circuit has clarified that '[i]t is

universally recognized that the particularity requirement must be applied with a practical margin

of flexibility, depending on the type of property to be seized, and that a description of property

will be acceptable if it is as specific as the circumstances and nature of activity under

investigation permit.'"  United States v. Rocher, No. 217CR107, 2018 WL 1071892, at *3 (M.D.

Fla. Feb. 26, 2018) (quoting United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982)).

"A search warrant must indeed be sufficiently precise as not to permit a general search, but the

test is the reasonableness of the description.  Elaborate specificity is unnecessary."  Id. (citing

United States v. Strauss, 678 F.2d 886, 892 (11th Cir. 1982); United States v. Burke, 784 F.2d

1090, 1092 (11th Cir. 1986) (stating a warrant "need only describe the place to be searched with

sufficient particularity to direct the searcher, to confine his examination to the place described,

and to advise those being searched of his authority.")).

  "When the Government conducts a search pursuant to a warrant that does not particularly

describe the things to be seized, the appropriate remedy is for the court to exclude from evidence

in a later criminal action the items improperly taken."  United States v. Cook, 657 F.2d 730, 735

(5th Cir. 1981).  And where the warrant provides a constitutionally sufficient description of some, but not all of the things to be seized, the court should typically "sever the portion of the search warrant from so much of the warrant as passes constitutional muster" and not suppress properly seized evidence.  Id.; United States v. Derbouze, No. 14-20159-CR, 2014 WL 2918670, at *6 (S.D. Fla. June 26, 2014), aff'd (Sept. 4, 2015) (concluding that items seized were not seized under provisions of the warrant challenged as overly broad, and, therefore, there was no basis to suppress those items).

The challenged portion of the warrant in this case states:

There is suspected certain information, to wit: Suspected Narcotics and any and all articles, instruments, documents, videotapes, audio tapes, ledgers, tally sheets, recordation of the purchase of assets, noted diaries, phone records and computer hardware and software consisting in part of and including, but not limited to: floppy discs, hard drives, CPU, keyboards, monitor screens, printers, telephone answering machines, tapes and documents containing lists of names and or figures, cellular telephones and copies of any and all tax returns (federal and state) or monies used to facilitate the sale, use or delivery of Narcotics in violations of the Georgia Controlled Substance Act.

Doc. 254-1 at 4.  In the next paragraph, the warrant directs the executing officers to search for and seize the above-described items.  Id.  When questioned about the generalized list of items set forth in the search warrant application, some of which were antiquated technologies, TFA Fields stated this list likely was included in the affidavit as a result of copying and pasting from another affidavit.

Defendant argues there was no probable cause to search for or seize many of items listed in the warrant, given that many of the items in the list were boilerplate, cut and pasted from earlier warrant applications, and that many of the items are antiquated technologies that almost certainly would not have been present during this search.  Defendant contends this list is so deficient that it demonstrates the warrant was not supported by probable cause.  Defendant also

takes issue with the fact that "narcotics" were not limited to methamphetamine and marijuana (narcotics discussed during the controlled buy) and firearms were not expressly identified in the warrant. At base, Defendant contends the challenged language above shows the warrant lacked particularity as to the things to be searched for and seized.

The Government argues the list of exemplar terms (i.e., "consisting in part of and including, but not limited to: floppy discs, hard drives, CPU, keyboards, monitor screens, printers, telephone answering machines, tapes and documents containing lists of names and or figures, cellular telephones and copies of any and all tax returns (federal and state) or monies") is a non-exhaustive list of terms that does not narrow the scope of the warrant. The Government argues, once the exemplar list is removed, the language of the warrant is clear: officers executing the warrant were to search for and seize "Suspected narcotics" and "articles, instruments, documents, videotapes, audio tapes, ledgers, tally sheets, recordation of the purchase of assets, noted diaries, phone records and computer hardware and software . . . used to facilitate the sale, use or delivery of Narcotics in violations of the Georgia Controlled Substance Act." Alternatively, the Government contends that only evidence seized pursuant to unconstitutional language in the warrant should be suppressed, and there is no such evidence in this case.

Here, the Government has the better arguments. The warrant in this case enabled law enforcement officers conducting the search to reasonably ascertain and identify the things to be seized. The operative language in the warrant states that officers are to search for and seize suspected narcotics and various articles and instrumentalities used in the "sale, use or delivery" of illegal narcotics. Applying the practical margin of flexibility that it must, I find this operative language specifically connects the items that were to be searched for and seized (e.g., narcotics and articles and instrumentalities used narcotics trafficking) to the specific criminal conduct

suspected (e.g., narcotics trafficking). See United States v. Smith, 918 F.2d 1501, 1507–08 (11th Cir. 1990) (holding that language describing "cocaine, documents, letters, photographs, business records, and other evidence relating to narcotics trafficking" was directed to materials having a nexus to narcotics trafficking and meets "the standards of practical accuracy that enable the searcher to ascertain and identify things authorized to be seized"). Indeed, law enforcement officers seized items plainly fitting the description in the warrant: body armor; one ski mask; United States currency; one cellular phone; ammunition; firearm parts; two firearms; several bags containing suspected marijuana; several bags containing suspected methamphetamine; and one digital scale. Doc. 254-2. The exemplar list challenged by Defendant is simply that—a list of examples of items that *might* qualify under the broader description of items suspected to be present. The exemplar list is antiquated and highlights the fact that law enforcement officers have likely used boilerplate language like this for an extended period of time, but the list is of little consequence.[5] See, e.g., United States v. Obie, No. 118CR424, 2019 WL 7841856, at *6 (N.D. Ga. Nov. 6, 2019), *report and recommendation adopted*, 2019 WL 6873520 (N.D. Ga. Dec. 17, 2019) (rejecting particularity challenge based on exemplar list of items).

Defendant cites no controlling authority approving his arguments that the term "narcotics" was too broad (in that it was not limited to methamphetamine and marijuana) and that the warrant needed to expressly identify firearms lack merit. Moreover, the Eleventh Circuit has approved such "all drug-related items" warrants and the seizure of firearms in the execution of those warrants. See United States v. Prather, 279 F. App'x 761, 766 (11th Cir. 2008) ("The

---

[5]     Moreover, none of the items in this list were seized during the search. As noted, where the warrant provides a constitutionally sufficient description of some, but not all of the things to be seized, the court should typically "sever the portion of the search warrant from so much of the warrant as passes constitutional muster" and not suppress properly seized evidence. United States v. Cook, 657 F.2d 730, 735 (5th Cir. 1981). In other words, in these circumstances the Court should only determine if the items seized in this case were seized under portions of the warrant that "pass constitutional muster."

warrants were broad with respect to their inclusion of all drug-related items; however, because the police had probable cause to believe drug dealing was occurring at the locations being searched, the scope of the warrants appropriately matched the scope of police suspicion. . . . Although neither warrant specifically authorized the seizure of weapons, the police did not err in confiscating weapons when they found them. When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location.").

The description of items to be searched for and seized in the warrant at issue in this case was sufficiently particular, and no evidence should be suppressed based on Defendant's challenges to the description of items in the warrant.

### C.    Veracity of Confidential Informant

An "[informant's] 'veracity' and 'basis of knowledge' . . . [are] relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for by a strong showing as to the other." United States v. Brundidge, 170 F.3d 1350, 1352–53 (11th Cir. 1999) (quoting Gates, 462 U.S. at 233)). A deficiency in one of these considerations may also be compensated for through "corroborating evidence gathered by law enforcement officials," United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995), although "independent police corroboration has never been treated as a requirement in each and every case." Brundidge, 170 F.3d at 1353. However, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Johnson, 444 F. App'x 424, 425–26 (11th Cir. 2011) (internal citation omitted) (alteration in the original) (affirming denial of

motion to suppress where corroborating evidence included affiant's observation of controlled buys of narcotics).

In the warrant application, TFA Fields and Detective Gallob stated they met with the CI at a predetermined location, and the CI told officers he could buy an "eight ball" of methamphetamine from Defendant. Doc. 254-1 at 1. The CI told officers Defendant sold methamphetamine from his residence in Hinesville. Id. at 2. The officers searched the CI's car and person and gave the CI $300.00 of prerecorded task force funds with which to buy methamphetamine. Officers issued the informant an audio-video recording device. TFA Fields and Detective Gallob followed the CI to Defendant's house. Once the CI was able to purchase methamphetamine from Defendant using the prerecorded task force funds, the CI and the officers met again at the predetermined location. The CI gave Detective Gallob the plastic bag containing suspected methamphetamine, who in turn gave it to TFA Fields, and the officers searched the CI's car once again. Id. In addition, the affidavit stated the CI was known to the Liberty County Narcotics Unit for approximately two months before the buy and had "provided reliable information throughout that time." Id. at 3.

The record demonstrates the controlled buy in this case was properly executed using the CI, and, therefore, probable cause was established on that basis alone. United States v. Roundtree, 299 F. App'x 905, 907 (11th Cir. 2008) (a properly executed controlled buy is sufficient, standing alone, to establish probable cause). Even if the CI's veracity and reliability were not established within the search warrant, which it likely was, the officers had probable cause to believe a crime was being conducted and contraband was located at Defendant's residence based on their first-hand observations of the controlled buy. United States v. Booker, 131 F. App'x 234, 242–43 (11th Cir. 2005) (upholding the district court's denial of a motion to

suppress under the totality of the circumstances based on the assertion that the confidential informant's reliability and veracity were lacking in the affidavit underlying the search warrant). Thus, the CI's veracity and reliability need not have been established in the search warrant application.

**D.      No-Knock Provision in Warrant and Execution of Warrant**

A search conducted pursuant to a warrant "is valid if it is conducted reasonably" under the totality of the circumstances. <u>United States v. Manning</u>, 140 F. App'x 212, 217 (11th Cir. 2005) (citing <u>United States v. Banks</u>, 540 U.S. 31, 36 (2003)). "The Fourth Amendment incorporates the important common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." <u>United States v. Segura-Baltazar</u>, 448 F.3d 1281, 1289 (11th Cir. 2006) (citing <u>Wilson v. Arkansas</u>, 514 U.S. 927, 934 (1995)). However, a "no-knock" entry is permissible under special circumstances. <u>Id.</u> "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394 (1997). In those cases where the entry into a residence is based on a knock-and-announce violation, the issue before a court is what remedy is appropriate. <u>Hudson v. Michigan</u>, 547 U.S. 586, 590 (2006). Exclusion, or suppression, of evidence obtained in violation of the Fourth Amendment "may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." <u>Id.</u> at 591. An illegal manner of entry is not a "but-for" cause of obtaining evidence. <u>Id.</u> at 592. Even if an illegal entry can be characterized as a but-for cause of discovering what was inside, the United States Supreme Court has "never held that evidence is

'fruit of the poisonous tree' simply because 'it would not have come to light but for the illegal actions of the police.'" Id. at 593 (internal citation omitted).

Officers requested a no-knock authorization in the warrant application based on Defendant's criminal history, the handguns the CI saw at the time of the controlled buy, and video surveillance of Defendant's residence in the interests of officer safety. Doc. 254-1 at 6. Judge Bomar authorized officers to gain entry into Defendant's house without announcing their presence. Id. Although the affidavit contained one sentence seeking the no-knock authorization, such request was plainly supported by information relayed to the issuing judge throughout the rest of the affidavit. The affidavit, therefore, establishes probable cause for the no-knock authorization. Even if no-knock entry was not properly authorized, it would be inappropriate to suppress the evidence seized during the search based on that fact.

### E.    Failure to Leave a Copy of Warrant at Defendant's Residence

Defendant argues for the first time in his Supplement that the officers executing the warrant failed to leave a copy of the warrant at his residence.[6] Defendant does not provide any evidentiary support for this argument. Rather, he states in conclusory fashion that he asked his "boss to send [him] copies of the warrants reportedly left in a conspicuous place," but that "she informed [Defendant] nothing was left behind." Id. at 2. Defendant does not provide the name of his boss or describe the circumstances of her efforts to locate the receipt.[7] On the other hand,

---

[6]      Defendant's position in his Supplement is contrary to the statement in Defendant's original Motion to Suppress that "the original search warrant was left in the residence at Ed Powers Road." Doc. 252. However, the Court notes that Defendant was represented by counsel at the time the original Motion to Suppress was filed, and he is now proceeding pro se. The Court, therefore, will consider Defendant's current argument and disregard the previous statement in the original Motion to Suppress.

[7]      As noted above, at the February 10, 2020 hearing, Defendant was given an opportunity to supplement his Motion to Suppress and was ordered to inform the Court if he requested any additional hearing related to the suppression issues. Defendant filed his Supplement but did not provide any additional evidence to the Court and did not make any request for an additional hearing.

TFA Fields testified under oath at the February 10, 2020 hearing that he left a copy of the affidavit and warrant at Defendant's residence after the search was completed. Based on this record, I find that a copy of the warrant was left at Defendant's residence, as Defendant has not offered any evidence to contradict TFA Field's sworn testimony.

Additionally, even if the officers failed to leave a copy of the warrant at Defendant's residence, the proper remedy would not be suppression of the seized evidence. Leaving a copy of a warrant at the premises searched is not a constitutional requirement; rather, it is a required under Federal Rule of Criminal Procedure 41(f). Courts have consistently held that failure to leave a copy of a warrant in violation of Rule 41(f) is not a basis for invalidation of the warrant or suppression of seized evidence, unless there is a showing of prejudice by the defendant or a showing of intentional and deliberate disregard of the Rule's requirements. See United States v. Norris, No. 1:05-CR-479, 2006 WL 8425336, at *6 (N.D. Ga. May 18, 2006), *report and recommendation adopted*, 2007 WL 9657874 (N.D. Ga. Sept. 18, 2007) ("Violations of Rule 41(f) 'are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith.'" (citing Marx, 635 F.2d at 441); see also United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000) (same); United States v. Robinson, No. 08-60179-CR, 2008 WL 5381824, at *10 (S.D. Fla. Dec. 19, 2008), *report and recommendation adopted*, 2009 WL 33307 (S.D. Fla. Jan. 6, 2009) (same) (collecting cases). Here, Defendant has made no showing of prejudice or intentional or deliberate disregard of Rule 41's requirements. Accordingly, even if the Court were to find that a copy of the warrant was not left at Defendant's residence, the violation would still not require suppression of the seized evidence.

In sum, the totality of the circumstances is sufficient to establish probable cause supporting the issuance and execution of the search warrant. Accordingly, the Court should **DENY** Defendant's Motion to Suppress.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress and allow the Government to use all information and evidence obtained as a result of the search warrant as appropriate.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 14th day of April, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA